740 F.2d 1476
 Lonnie BROWNLOW, Hugo Buerger, III, John Gassaway and Evelyn
Gassaway, Plaintiffs-Appellees,
v.
Joe E. AMAN, Ron G. Crane, Gordon Crane, Ronald Raymond
Edwards, Lowell L. Foster, Ralph E. Kellogg, Paul
E. Ketterling, T. Donald Reynolds and
Gordon Sams, Defendants-Appellants.
 No. 83-1239.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 2, 1984.
 
 Robert Dunlap, Colorado Springs, Colo., for plaintiffs-appellees Brownlow and Buerger.
 Edwin J. Lobato, Alamosa, Colo., for plaintiffs-appellees Gassaway.
 William J. Brauner, Caldwell, Idaho, for defendants-appellants.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 The nine appellants are part of the seventeen defendants against whom money judgments were entered following jury verdicts in favor of the four plaintiffs-appellees in a diversity action based on breach by virtue of nonpayment of promissory notes. Each of the plaintiffs reside in Colorado and each of the appellants reside in Idaho.
 
 
 3
 The facts will be recited as succinctly as possible to aid in discussing the contentions on appeal. The appellants are members of the Bible Missionary Church in Caldwell, Idaho, and Boise, Idaho. They desired to obtain a loan for construction of a new church building, but had been unable to do so. One of the parishioners, appellant Roscoe E. Kellogg, was acquainted with some fund raisers in Georgia, one of whom was John Harrell, who proved to be a cruel, malicious con man. Rev. Donald R. Plemons, on behalf of the Church, mailed a loan application to Harrell's group in Georgia. In response, Harrell came to Caldwell, Idaho, in September, 1978, with the pretense of assisting the Church in its loan application. On one such visit, Harrell was accompanied by an attorney from Atlanta, Georgia.
 
 
 4
 At a meeting held on September 7, 1978, between him and twelve or thirteen church members, Harrell distributed various papers and told the members present that they were each required to complete the papers simply to help expedite the desired insurance loan, but that none of them were assuming any personal financial obligation. None of the appellants realized, however, that they had executed a promissory note for a specific sum of money or that it involved the purchase of land in Colorado by deed of trust. Harrell stated further at the meeting that he would return in about two weeks to finalize the loan papers. Of course, he did not do so. Harrell was never heard from following the September 7 meeting except by a telephone call to him from Rev. Plemons, who testified that after receiving some "deposit slips" regarding purchase of land in Colorado, he was told by Harrell not to worry about it and that somebody was crooked or something was wrong. The appellants and other defendants who executed the papers testified that they were not completed and were substantially in blank. The plaintiffs, however, presented evidence to the contrary, and the matter was resolved by the jury adverse to the appellants.
 
 
 5
 In October, 1978, the appellants and other defendants who had executed the promissory notes were contacted by the plaintiffs as holders in due course of the various notes entitled "Note Secured By Deed of Trust" and advised that the plaintiffs had purchased, by assignment, a 75.45061% interest in the notes from the original payee, Land Endowment Southwest, Inc., of Ft. Worth, Tarrant County, Texas. The Plaintiffs accepted the substitute collateral without notice of any defenses to the notes. The plaintiffs informed the appellants and other defendants further that the initial lump-sum payment was due on October 15, 1978, in each case amounting to at least the principal sum of $30,000.00 plus interest. The initial payment was treated as part payment of the entire purchase price. Monthly payments were provided for the payment of the principal balance and interest, approximately $50,000.00. Essentially, the nature of the alleged transaction was that the various promissory notes were executed and delivered as partial payment by the appellants and other defendants for the purchase of certain real property situated in Costilla County, Colorado. The promissory notes were identical and each contained a paragraph reading: "THIS NOTE is given as part payment for the purchase price of real property and is secured by a Deed of Trust of even date herewith between the undersigned Purchaser(s) and the PUBLIC TRUSTEE of Costilla County, Colorado, the terms and conditions of which Deed of Trust are hereby made a part of this note by reference." (Appendix, Exhibits A through P, pp. 24-39.) The genuineness of the signatures of the appellants and other defendants on the several notes was stipulated. It was stipulated further that the plaintiffs were holders in due course.
 
 
 6
 The record established the following facts: appellant Reverend Plemons is a graduate of Bible College with a degree of Bachelor of Theology; appellant Joseph Aman is a newspaper publisher with business interests; appellant Thomas Donald Reynolds is an accountant with a Bachelor of Arts Degree in Accounting; and appellant Ralph Kellogg has been a business man for a number of years with numerous employees. (R., Vol. VI, pp. 30, 31, 56, 95, 101, 70, 75.)
 
 
 7
 At trial, the appellants and other defendants uniformly testified that they did not realize what they were signing when Harrell presented the papers; they had no belief that the promissory notes and deeds of trust obligated them to purchase land in Colorado because each testified that the document submitted to each of them was basically blank on its face at the time of execution. However, one of the appellants, Ronald Raymond Edwards, testified outside of the presence of the jury that the document was complete at the time he executed it, with the exception of dates, tract identification, and acreage. Appellants Gordon Sams, Joseph Aman, Thomas Donald Reynolds, and Ralph Kellogg each testified that they had received a warranty deed for the Colorado property described in their respective "Note Secured by Deed of Trust." The plaintiffs had no knowledge of Harrell's contacts with the appellants, nor was there any association between Harrell and the plaintiffs. The appellants contended in the trial court, however, that the plaintiffs, as holders in due course, took assignment of the notes subject to any defense the appellants might have against the original payee on the ground that the transaction was void under Idaho law, the site of its alleged execution. The trial court rejected this contention.
 
 
 8
 The contention rejected was that the Harrell sale or offering did not comply with the provisions of Idaho Code Secs. 15-1801 et seq. and the Subdivided Lands Disposition Act of Idaho making it unlawful to offer or dispose of an interest in subdivided lands located without the State of Idaho without prior registration with the Idaho Real Estate Commission. The Idaho statute permits the obligor to declare, by election, the obligation voidable, rather than void. Because the appellants have at all times alleged the transaction to be a nullity and thus void, the trial court properly rejected the application of the Idaho statutes. However, the court did not err in limiting the appellants to the defense pleaded under Sec. 3-305 of the Uniform Commercial Code adopted both in Colorado and Idaho. Section 3-305(2)(b) provides that the illegality of the transaction must render the obligation of the party a nullity.
 
 
 9
 The appellants filed a pretrial Motion to Dismiss for lack of in personam jurisdiction, which was denied by the district court. The court granted the plaintiffs' motion for partial summary judgment on the issue of whether they were holders in due course. Following adverse verdicts, the appellants filed a motion for a new trial, which was denied by the court. This appeal followed.
 
 
 10
 On appeal, the appellants contend that the district court erred in (1) denying their Motion to Dismiss filed pursuant to Fed.R.Civ.P. rule 12(b)(2) for lack of in personam jurisdiction, (2) rejecting two of their proffered jury instructions, (3) ruling that they could not pursue inconsistent defenses, and (4) denying their motion for a new trial.
 
 I.
 
 11
 The appellants contend that the district court erred in denying their motion to dismiss for lack of in personam jurisdiction pursuant to Fed.R.Civ.P. rule 12(b)(2). We disagree.
 
 
 12
 The appellants argue first that they never knew that they were purchasing land in Colorado in this transaction and further that there were not sufficient "minimum contacts" with the forum State of Colorado inasmuch as the promissory notes were executed in Idaho and were payable to Land Endowment Southwest, Inc., at Fort Worth, Texas. Further, the appellants point out that they made no payments on the notes, that they never went to Colorado to investigate the purchase of the land in Colorado, and that none of them have ever owned, used or possessed land in Colorado. In addition, the appellants argue that they have never intended to nor actually transacted any business in Colorado.
 
 
 13
 The relevant Colorado long arm statute is C.R.S. Sec. 13-1-124 (1973), which provides in part:
 
 
 14
 Jurisdiction of Courts. (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
 
 
 15
 ....
 
 
 16
 (c) The ownership, use, or possession of any real property situated in this state ....
 
 
 17
 The Colorado long-arm statute was designed to codify the minimum contacts principle set forth in International Shoe, see generally Cox v. District Court, 160 Colo. 437, 417 P.2d 792 (1966), and " 'to extend the jurisdiction of [the Colorado] courts to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution.' " Jenner & Block v. District Court, 197 Colo. 184, 590 P.2d 964, 965 (1979) (quoting Dwyer v. District Court, 188 Colo. 41, 532 P.2d 725, 726 (1975)). A plaintiff need only make a prima facie showing of threshold jurisdiction, which may be determined from the allegations of the complaint, to withstand a defendant's motion to dismiss. Pioneer Astro Indus., Inc. v. District Court, 193 Colo. 409, 566 P.2d 1067, 1068 (1977). The resolution of jurisdictional issues under the Colorado long-arm statute frequently involves an ad hoc analysis of the facts. Waterval v. District Court, 620 P.2d 5, 9 (Colo.1980), cert. denied, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981). The Amended Complaint alleged that the plaintiffs were holders in due course of the respective promissory notes, which were attached thereto fully complete in form and marked as exhibits. (R., Vol. I, pp. 1-32.) The appellants filed their Motion to Dismiss for Lack of Jurisdiction Over the Person with supporting brief, prior to Answer. (Id. at 33.) The appellants also filed supporting affidavits of A. Gordon Crane, Ronald Raymond Edwards, Lowell L. Foster, Larry D. Gardner, T. Donald Reynolds and Gordon Sams, wherein each stated that the paper signed in the State of Idaho was in blank form, executed upon the encouragement of John Harrell pursuant to his representation that the signing would not obligate any of the appellants in any manner whatsoever (R., Vol. I, pp. 37-54).
 
 
 18
 In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court specifically rejected the foreseeability of consequences test for finding the minimum contacts required for in personam jurisdiction; instead, the Court identified the foreseeability necessary to the due process analysis as "the defendant's conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there." Id. at 297, 100 S.Ct. at 567. In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Supreme Court stated that in order to meet the minimum contacts test, it is essential that the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. On the basis of the Amended Complaint with attached copies of the promissory notes and deeds of trust, the allegations support the proposition that the defendants purposefully availed themselves of the privilege.
 
 
 19
 In Van Schaack & Co. v. District Court, 189 Colo. 145, 538 P.2d 425 (1975), the Colorado Supreme Court set forth a three-prong test for long-arm jurisdiction:
 
 
 20
 (1) " 'the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing consequences in that state,' " (2) " 'the cause of action must arise from the consequences in the forum state of the defendant's activities,' " and (3) " 'the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.' "
 
 
 21
 Id. 538 P.2d at 426 (quoting White Lumber Sales, Inc. v. Sulmonetti, 252 Or. 121, 448 P.2d 571, 579 (1968)).
 
 
 22
 In applying this test, the Van Schaack court held that even though the only contact with Colorado by a Kansas bank was the issuance of a letter of credit on behalf of a purchaser of real estate in Colorado, this was a substantial enough connection with Colorado subjecting the Kansas bank to Colorado's long-arm statute. The court held that the three-prong test had been satisfied.
 
 
 23
 We observe that the instant case, like Van Schaack, involves a contract for the purchase of land in Colorado. Each of the promissory notes executed by the appellants were given, by express language contained therein, as part payment of the purchase price of real property located in Costilla County, Colorado, secured by a deed of trust. Further, as in the instant case, there were no physical contacts in Colorado by the Kansas bank in Van Schaack.
 
 
 24
 A review of Colorado Supreme Court decisions involving the reach of Colorado's long-arm statute in cases involving the purchase or use of real property located in Colorado demonstrate that the minimum contacts test is very relaxed. In Giger v. District Court for County of Summit, 189 Colo. 305, 540 P.2d 329 (1975), the court held that a resident of Missouri who executed in Missouri a written guarantee of rental payments and performance of lease covenants on behalf of a lessee residing in Colorado covering real property located in Colorado, was subject to the in personam jurisdiction of the Colorado courts when breach of the lease covenants was alleged by the lessor. The court reasoned that because the written guarantee was given to induce lessors to consent to an assignment of the lease, such inducement satisfied the substantial connection or minimum contacts test. The facts in Giger, as in Van Schaack, did not involve any physical contact between the nonresident defendants and the State of Colorado. Further, each case involved only a single transaction.
 
 
 25
 In Dwyer v. District Court, Sixth Judicial District, 188 Colo. 41, 532 P.2d 725 (1975), the court found substantially more physical contacts by the nonresident defendant than in either Geiger or Van Schaack in a case involving purchase of real property located in Colorado, but the court placed its emphasis elsewhere in finding that the Colorado long-arm statute reached the defendant. Although the court viewed the defendant's visits to Colorado from his Texas home to view the real property and make arrangements to employ an engineering firm to conduct studies and tests of the land as "purposeful acts," the court emphasized it was "most important" that "the subject matter of the contract, the real estate, was located in Colorado thereby making Colorado the state with the greatest interest in the transaction." Id. 532 P.2d at 727 (emphasis added). Further, the court observed that "[u]nder Colorado law, the execution of a contract to purchase land renders an equitable conversion of the purchaser's contractual interest in the land into realty" and that "[t]he nature of such an equitable ownership substantially enhances the purchaser's contact with this state." Id. The court stated that when the nonresident purchaser executed the contract, he became entitled to many significant protections afforded by the laws of Colorado to owners of realty. Id. The same reasoning applies to the appellants in the instant case. Of further significance, the Dwyer court cited McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), for the proposition that the due process clause was not offended when a California state court exercised in personam jurisdiction over a nonresident Texas corporation in a situation where the out-of-state corporation's sole contact with the forum state was a single contract.
 
 
 26
 The trial court's conclusion that the appellants were subject to Colorado's long-arm statute does not conclude our inquiry. We must yet determine whether the due process clause of the Constitution has been offended, i.e., whether the maintenance of this suit offends " '[t]raditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278). See also Leney v. Plum Grove Bank, 670 F.2d 878 (10th Cir.1982); Cleverock Energy Corp. v. Trepel, 609 F.2d 1358 (10th Cir.1979), cert. denied, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). In Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court held that the due process clause of the United States Constitution was not violated by the State of Ohio reaching out to snare a defendant, which conducted business in Ohio, in a cause of action not arising from acts within the forum.
 
 
 27
 Based on the authorities cited and the pleadings before the trial court when the motion to dismiss was denied, we are satisfied that the district court did not err in denying the appellants' motion to dismiss for lack of in personam jurisdiction. The execution of the promissory notes by the appellants in Idaho constituted sufficient acts to meet the minimum contacts test in Colorado. The promissory notes, given in conjunction with and as part and parcel of the contract for purchase of Colorado real property were executed prior to the acquisition, by assignment, of the share of the promissory notes by the plaintiffs, who were holders in due course. Under all of the circumstances, we cannot hold that it was unfair to require the nonresident appellants to defend in the Colorado forum.[1] According to the pleadings and the promissory notes marked as exhibits and attached to the Amended Complaint, the appellants seemingly "purposefully availed" themselves of the privilege of conducting business in the State of Colorado.
 
 
 28
 In judging minimum contacts a court must focus on "the relationship among the defendant[s], the forum, and the litigation ...." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Looking at the totality of the facts in the case at bar, as we must, Kulko v. California Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978), reh'g denied, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978), we hold that the district court did have in personam jurisdiction over the appellants.
 
 II.
 
 29
 The appellants contend that the trial court erred in rejecting two of their proffered jury instructions, Nos. 1 and 2. (Appendix, pp. 64, 65.)
 
 
 30
 Instruction No. 1 purported to represent the appellants' theory of the case, Brief of Appellant at 15, relating to section 3-305(2)(c) of the Uniform Commercial Code, then in force both in Colorado and Idaho, providing:
 
 
 31
 Rights of a holder in due course ... [A] holder in due course ... takes the instrument free from ... All defenses of any party to the instrument with whom the holder has not dealt except ... [s]uch misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms ... (emphasis added).
 
 
 32
 The appellants' tendered Instruction No. 1 read:
 
 
 33
 You are instructed that a holder in due course takes the instrument free from all claims to it on the part of any person with whom the holder has not dealt with except such misrepresentation as has induced the party to sign the instrument with neither knowledge of its character or its essential terms.
 
 
 34
 In determining whether the party signing the instrument signed the instrument without knowledge or reasonable opportunity to obtain knowledge of its character or of its essential terms you may consider all relevant factors including age, sex of the party, his intelligence, education, business experience, ability to read, the representations made to him or his reason to rely on them or have confidence in the person making them or such other factors based upon the evidence presented.
 
 
 35
 (R., Vol. V, p. 938) (emphasis added).
 
 
 36
 The appellants' tendered Instruction No. 2 read, in pertinent part:
 
 The parties to this case are:
 
 37
 The Plaintiffs have filed in this Court a complaint alleging that they, in effect, bought the promissory notes which are the subject of this lawsuit. They have alleged that they acquired these notes for value, in good faith, and without knowledge or notice of the circumstances under which the notes were signed.
 
 
 38
 This court has earlier ruled that these allegations are true. These Plaintiffs are, therefore, what the law calls "holders in due course." This means that many matters which the Defendants might have raised as defenses to the payee named in the notes, Land Endowment Southwest, cannot be raised as defenses against these Plaintiffs.
 
 
 39
 The Defendants have, however, raised a defense which, if proved by them, does constitute a valid defense to these Plaintiffs.
 
 
 40
 The Defendants claim and they have the burden of proving the same, that the promissory notes sued on here ... were in each instance signed by them under circumstances amounting to a fraudulent misrepresentation with neither knowledge of nor reasonable opportunity to obtain knowledge of the character of the document signed or of its essential terms.
 
 
 41
 In determining whether the defendants were induced to sign the documents in question due to the misrepresentations of John Harrell you may consider relevant factors including age, sex of the party, his intelligence, education, business experience, ability to read, the representations made to him or his reason to rely on them or have confidence in the person making them or such other factors based upon the evidence presented.
 
 
 42
 (Id. at 939) (emphasis added).
 
 
 43
 The trial court wrote on the bottom of Instruction No. 2: "Tendered and refused. This may be good law under other facts but under defendants' position here, the instruction is poor law." (Id.)
 
 
 44
 Considerable colloquy occurred relative to the submission of Instructions 1 and 2. Following the tender of defendants' Instruction No. 1, the court inquired of counsel for the defendants what their claim or theory of the case is:
 
 
 45
 MR. MYLES: Defendants Instruction No. 1 is our claim.
 
 
 46
 THE COURT: No, you don't phrase that as a claim. That is the law. It is your duty, your absolute duty to submit an instruction setting forth your theory of the case ... where is it?
 
 
 47
 MR. MYLES: Your Honor, Defendants' Exhibit [Instruction] No. 1 is the only one that we have prepared--
 
 
 48
 THE COURT: Well, that's not a theory of the case. That is an instruction as to the law. Now, you object to the only theory-of-the-case instruction which has been presented to me. I want your theory of the case ... [y]our Instruction No. 1 doesn't even approach being a theory-of-the-case instruction ... [it] says that as a matter of law certain things are true. That isn't a theory-of-the-case instruction, sir.
 
 
 49
 (R., Vol. VII, pp. 258-59) (emphasis added).
 
 
 50
 Counsel for the defendants agreed to the instructions given by the court except an instruction tendered by the plaintiffs that the defendants' defense was that they signed blank papers on September 7, 1978, and that the typewriting was filled in later. Counsel for the defendants argued that such was not the defendants' defense, and that the instruction was not applicable to the case. Counsel for the plaintiffs, in speaking against the Defendants tendered Instruction No. 2 stated the plaintiffs' position:
 
 
 51
 MR. DUNLAP: ... I submit that the defendants have not squarely faced the dilemma which they have placed themselves in ... they want to have the jury instructed upon the basis of facts which they have been unwilling to present to the jury.
 
 
 52
 If they had come into this courtroom and said before the jury ... that they signed these documents with [certain] blanks on them, then they would be asking for an instruction under 305 which might be appropriate except that I suspect they recognize it would be terribly difficult to argue that a high school principal, a newspaper publisher, a CPA did not understand what it was they signed.
 
 
 53
 This instruction from 305 assumes a maker who concedes that he has signed the instrument being sued on, and the problem which these defendants have is that they have been unwilling to concede that they signed the document [as sued on].
 
 
 54
 Given these facts before the jury, the jury wouldn't know what to do with an instruction that talks about whether these people had a reasonable opportunity to determine the contents and the character of the document signed. These defendants under the evidence they have presented could have from now to Armageddon, and they still would not have any way of determining the character of the document signed. (Because the defendants had uniformly testified that the documents were in blank form.)
 
 
 55
 I really believe that the issue in this case, given the law as it is, is ... when they signed the documents, was that language of promissory note on it or wasn't it.
 
 
 56
 (R., Vol. VIII, pp. 267-69) (emphasis added).
 
 
 57
 After counsel for the defendants again argued for submission of tendered Instruction No. 2 on the basis that "none of the papers signed by the defendants in these cases were the notes as they appear today," id. at 269, still counsel contended that the instruction "is based on the substantive law of 305" and that is the defense presented to the jury. (Id. at 270.)In rejecting Defendants' Instruction No. 2, the trial court said:
 
 
 58
 THE COURT: I have no question but that Defendants' Instruction No. 2 may very well be an accurate statement of the law. But as I view it, you are asking me to instruct on facts that aren't in evidence ...
 
 
 59
 You're asking to try the case on the theory that the signatures were placed upon a blank or almost blank piece of paper; and you're asking me to instruct the jury that if they find you're wrong on that, then you've got a fall-back position that even though your testimony is absolutely wrong and even though they signed the note ... they can then have the jury consider whether in signing that which they say they never signed, they were negligent.
 
 
 60
 So on the record made, I'm going to refuse the instruction.
 
 
 61
 (Id.) (emphasis added).
 
 
 62
 The court proceeded to instruct the jury. Included was the following defense instruction given by the court, to which the appellants objected:
 
 
 63
 The plaintiffs have filed in this Court a complaint alleging that they in effect bought promissory notes which are the subject of this lawsuit. They have alleged that they acquired these notes for value in good faith and without knowledge or notice of the circumstances under which the notes were signed. I have earlier ruled that these allegations are true.
 
 
 64
 These plaintiffs are therefore what the law calls holders in due course. This means that many matters which the defendants might have raised as defenses to the payee named in the notes, Land Endowment, Southwest, cannot be raised as defenses against these plaintiffs. The defendnts [sic] have, however, raised a defense which if proved by them does constitute a valid defense to these plaintiffs.
 
 
 65
 The defendants claim, and it is their burden to prove, that the promissory notes sued on here, which have been marked as Exhibits A, B, C, E, F, G, I, L, N, and O, were in each instance signed by them before the piece of paper contained words indicating that it was a promissory note, before the typing which now appears on those exhibits was there.
 
 
 66
 In this connection, you are instructed that the fact that the underlined items may have been blank and that the tracts and acre information in the upper right-hand corner may not have been present at the time the instruments were signed is not a valid defense. The defendants do not rest their defense upon the claim that those specific items were not filled in. Their claim is that the remainder of the typing was not present when they signed.
 
 
 67
 To establish by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, the preponderance of the evidence means such evidence as when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not.
 
 
 68
 The preponderance of the evidence is not alone determined by the number of witnesses testifying in support of a particular fact. In determining whether any disputed fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses and all exhibits regardless of who may have called the witnesses.
 
 
 69
 However, any finding of fact you make must be based on probabilities, not possibilities. A finding of fact may not be based on surmise, speculation, or conjecture.
 
 
 70
 The burden of proof is on the defendants to establish their defense, which is an affirmative defense, by a preponderance of the evidence.
 
 
 71
 (Id. at 277-79) (emphasis added).
 
 
 72
 Thus, the trial court cut off the defense urged by the appellants under Sec. 3-305(2)(c). We hold that the trial court did not err in refusing to submit the appellants' tendered Instructions 1 and 2. We further hold that the trial court did not err in submitting the challenged instruction.
 
 
 73
 The official comment to Sec. 3-305(2)(c), i.e., that a holder in due course takes free of all defenses of any party to the instrument with whom the holder has not dealt except "such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms," states, in pertinent part:
 
 
 74
 The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay.
 
 
 75
 Uniform Commercial Code Sec. 3-305, 2 U.L.A. 241 (1977).
 
 
 76
 In the case at bar, the appellants testified uniformly that the papers they signed were in blank or substantially so. The plaintiffs' exhibits, i.e., the promissory notes as assigned/pledged to plaintiffs, were substantially and materially complete in form. The plaintiffs called one Charles Scott of Linwood, Kansas, a forensic document examiner, who testified at length relative to various tests he had conducted to determine whether the subject promissory notes were fully completed at the date of execution by the plaintiffs. His examination included various technical tests, primarily to determine what came first, the signature of the makers or the typewriting and whether all of the typewriting (except certain underlining in the text and the description tract in the upper right-hand corner) was on the notes when signed. (R., Vol. VII, pp. 160-68.) Scott expressed his opinion that, as a result of his examination, "[a]ll the typewriting with which I was concerned was on the paper and visible necessarily at the time the signatures of the makers, each maker, was placed thereon." (Id. at 169-70.)
 
 
 77
 Thus, the issue presented by the affirmative defense advanced by the appellants, bolstered by their uniform testimony that the papers they signed on September 7, 1978, were in blank form or substantially so, was firmly joined. The jury, as instructed by the court, was the fact finder on this critical issue. The jury found against the appellants. This finding was squarely directed to the appellants' theory-of-the-case defense: that the papers they signed on September 7, 1978, were in blank or substantially in blank; that they were induced to sign them by false representations of John Harrell, upon which they relied; and that they did not sign the completed promissory notes upon which plaintiffs' sued. When the jury returned verdicts in favor of the plaintiffs, it found that in each instance that appellants had executed promissory notes complete on their face.
 
 
 78
 There is no evidence in this record that any of the appellants would not have understood the terminology contained on the plaintiffs exhibits (the notes sued on) or that the appellants, because of their age, sex, intelligence, education or business experience could advance a cause of excusable ignorance of the contents of the notes. If such was the affirmative defense of the appellants', they were obligated to advance evidence in support thereof. This they failed to do.
 
 
 79
 The appellants' position and "theory of the case" in defense was, throughout this litigation, that the documents presented to them by Harrell and which they signed on September 7, 1978, were in blank:(1) As noted above, accompanying the Defendants' Motion to Dismiss For Lack of Jurisdiction Over The Person were affidavits of Defendants A. Gordon Crane, Ron G. Crane, Ronald Raymond Edwards, Lowell L. Foster, Larry D. Gardner, T. Donald Reynolds and Gordon Sams. Each contained affiants' statement that "the promissory note being sued upon by Plaintiffs was signed by myself in the State of Idaho, in blank form, upon the encouragement of a Mr. John Harrell, who represented himself as a professional fund raiser ...." (R., Vol. I, pp. 34-54.)
 
 
 80
 (2) The Defendants' Amended Answer set forth several affirmative defenses. Those pertinent for our purpose here follow.
 
 
 81
 (a) Under the Second Affirmative Defense, the Defendants pleaded:
 
 I.
 
 82
 [T]hat on or about September 7, 1978, each answering defendant, at the special instance and request of one John Harrell, signed a blank sheet of paper which, upon information and belief, at some later date became the alleged promissory notes mentioned and described in the several causes of action mentioned herein.
 
 II.
 
 83
 [T]hat the promissory notes ... were incomplete and contained no date, no payee, and no amount ....
 
 III.
 
 84
 [T]he plaintiffs received said notes with knowledge of such facts or under such circumstances that such knowledge is imputed to the plaintiffs and, consequently, the plaintiffs are not holders in due course entitled to enforce payment of the notes against the defendants.
 
 
 85
 (R., Vol. III, pp. 303, 304) (emphasis added).
 
 
 86
 (b) Under the Seventh Affirmative Defense, subsection V, the appellants pleaded that on September 7, 1978, John Harrell:
 
 
 87
 falsely represented to each defendant that the funds were immediately available to finance the construction of the church and, by a scheme of trickery, false pretenses and false representations amounting to a confidence game, induced each defendant to sign and execute certain blank documents which, upon information and belief, are the promissory notes made reference to in the plaintiffs' various claims against these answering defendants and the underlying Deeds of Trust.
 
 
 88
 (Id. at 306) (emphasis added).
 
 
 89
 The appellants further pleaded "[t]hat at the time these defendants signed and executed said blank documents, they did not know they were signing promissory notes and, but for the trickery, false pretenses and false representations so made to them, the[y] would not have signed said documents." (R., Vol. III, pp. 305-07) (emphasis added).
 
 
 90
 (3) Defendants Joe E. Aman, Gordon Crane, Ron G. Crane, Ronald Raymond Edwards, Lowell L. Foster, Larry D. Gardner, Ralph E. Kellogg, Paul E. Ketterling, T. Donald Reynolds, and Gordon Sams filed Answers to Interrogatories stating that the documents they signed on September 7, 1978, were either entirely in blank or substantially so. (Id. at 331-95.)
 
 
 91
 (4) The Pre-Trial Order, signed and consented to by counsel for all parties, dated May 18, 1981, included the following agreed recitals:
 
 
 92
 (A) Under "General Nature of Claims of the Parties":
 
 
 93
 "b) Defendants claim that the documents attached to Plaintiffs' Amended Complaint purporting to be promissory notes in favor of Land Endowment, Southwest, Inc., were nothing more than blank or incomplete sheets of paper when Defendants' signatures were affixed to the same. As such, defendants have generally denied the allegations contained within the Plaintiffs' Amended Complaint and assert the following affirmative defenses:
 
 
 94
 1. Lack of Consideration;
 
 
 95
 2. Unenforceability of the promissory notes due to Plaintiffs' failure to establish legal status as holders in due course of the purported promissory notes;
 
 
 96
 3. Fraud and misrepresentations inducing Defendants to execute the purported promissory notes;
 
 
 97
 4. Material alteration of purported promissory notes sufficient to deny enforcement of the same;
 
 
 98
 5. Irregularities in the purported promissory notes sufficient under Idaho law to render the documents void and unenforceable."
 
 
 99
 (R., Vol. I, p. 57) (emphasis added).
 
 
 100
 (B) Under "Contested Issues of Law"
 
 
 101
 (2) The Defendants claim that the piece of paper presented as being the promissory note in each case was less than complete when signed. The Plaintiffs will by interrogatory or otherwise determine what the Defendants specifically claim to have been on the paper when signed. The Defendants' responses to that discovery will present an issue as to whether that fact constitutes a defense pursuant to Sec. 4-3-305(2)(c) C.R.S.1973.
 
 
 102
 (Id. at 58) (emphasis added).
 
 
 103
 The Pre-Trial Order was agreed to control the course of the trial and all pleadings were deemed to merge therein. (Id. at 62.)
 
 
 104
 While ordinarily every party is entitled to have the jury instructed on each of the theories of his case, the rule applies only if the theories are supported by competent evidence. General Motors Corp. v. Walden, 406 F.2d 606, 608 (10th Cir.1969). Whether the evidence is sufficient to create an issue of fact for the jury is a question of law to be decided by the court. 9 Wright & Miller, Federal Practice and Procedure: Civil Sec. 2524. The trial court, in the instant case, observed that the appellants, for whom the trial court expressed great sympathy, could not have their cake and eat it too. The court properly ruled that the proffered Instructions 1 and 2, although accurate statements of law, did not apply to the case because they required facts not in evidence; the position of the appellants throughout the trial was that Harrell had presented notes to them in blank or substantially so.
 
 
 105
 To be a negotiable instrument, any writing must be signed by the maker, contain an unconditional promise or order to pay a sum certain, be payable on demand or at a definite time, and be payable to order or to bearer. Sec. 4-3-104(1), C.R.S.1973. As between the parties, a promissory note must be construed to give effect to the manifest intention of the parties. Mees v. Canino, 31 Colo.App. 514, 503 P.2d 1036, 1038 (1972). A note is not negotiable if the maker signs the instrument in blank or substantially in blank and it is thereafter completed without authorization of the maker. Sec. 4-3-115, C.R.S.1973; In re Estate of Norris, 532 P.2d 981, 982 (Colo.Ct.App.1974). "The completion of blanks in an instrument is not necessarily an alteration of the instrument"; that which "must be determined is whether the person completing the instrument had authority to do so." Antrim v. McMurrey, 549 S.W.2d 463, 465 (Tex.Civ.App.1977). When suit is brought on a completed note and a counterclaim is filed by the maker alleging fraud, a jury question is presented with respect to the conflicts in the testimony as to whether the note was blank when the endorser signed it. Rothstein v. First National Bank of Atlanta, 239 Ga. 216, 236 S.E.2d 350, 352 (1977).
 
 
 106
 The maker, when sued on a note, has the burden to establish the defense of unauthorized completion of the instrument by a preponderance of the total evidence. In re Estate of Norris, supra. Section 4-3-307(2) of the Colorado Revised Statutes provides that when signatures of the makers are established or admitted, as here, production of the instruments (in completed form) entitles a holder to recover (as a holder in due course) unless the defendants establish a defense. The equitable maxim that where one of two innocent persons must suffer by reason of the fraud of a third person, the party whose act, omission, or negligence enabled the third person to consummate the fraud should bear the loss, is a fundamental theory upon which the Uniform Commercial Code rests. Hanover Ins. Companies v. Brotherhood State Bank, 482 F.Supp. 501, 510 (D.C.Kan.1979). In the case at bar, the defendants enabled John Harrell to consummate the fraud. The plaintiffs, on the other hand, were not parties to the document transaction of September, 1978, and had no knowledge thereof. Section 4-3-407 provides that any material alteration of an instrument, including completion of an incomplete document, without authorization granted by the maker to the holder, does not create a defense for the maker against a subsequent holder in due course without knowledge.
 
 
 107
 The giving or refusal to give tendered instructions in a diversity case, as here, is governed by federal law and rules. Achin v. Begg Tire Center, 694 F.2d 226, 228 (10th Cir.1982). Under federal law, an instruction is properly given if supported by competent evidence; only where there is sufficient evidence to support an issue or theory is the party offering an instruction entitled to have the instruction given. Id.; General Motors Corp. v. Walden, supra. The evidence necessary to justify an instruction must be more than conjecture and speculation. General Motors Corp. v. Walden, supra at 609. A determination of the substance of a jury instruction in a diversity case is a matter of state law, while the grant or denial thereof is a matter of procedure controlled by federal law. Wright v. Albuquerque Auto-Truck Stop Plaza, Inc., 591 F.2d 585, 587 (10th Cir.1979); Chavez v. Sears, Roebuck and Co., 525 F.2d 827, 830 n. 2 (10th Cir.1975). Further, the question of whether an incorrect instruction given in a diversity case is prejudicially erroneous is governed by federal procedural law. Wright v. Albuquerque Auto-Truck Stop, supra. Questions of fact are, of course, for the jury. There are no fact questions for jury determination if there is insufficient evidence putting them in controversy. Jury instructions on an affirmative defense should be given only if they are reasonably supported by competent evidence. Tuttle v. Oklahoma City, 728 F.2d 456, 458 (10th Cir.1984). Thus, "[i]t is error to give an instruction on a theory which does not have sufficient evidence in the record supporting its submission to the jury." Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 927-28 (10th Cir.1984). See also United Telecommunications, Inc. v. American Television & Communications Corp., 536 F.2d 1310, 1319 (10th Cir.1976). A Pre-Trial Order measures the dimensions of a lawsuit, both in the trial court and on appeal; it defines the issues to be tried, designates witnesses and their proposed testimony and serves as a procedural tool to insure an efficient trial on the merits without chance or surprise. Fed.R.Civ.P. rule 16; Smith v. Ford Motor Co., 626 F.2d 784, 795 (10th Cir.1980), cert. denied, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). "It is prejudicial error for a trial court to give instructions which find no support in the evidence unless the record shows the error [to be] harmless." Kirschner v. Broadhead, 671 F.2d 1034, 1040 (7th Cir.1982).
 
 
 108
 We hold therefore that no error occurred when the trial court refused to submit the appellants' proffered Instructions 1 and 2.
 
 III.
 
 109
 The appellants argue that the trial court erred in ruling that they could not pursue inconsistent defenses. This relates directly back to the court's refusal to submit the appellants' requested Instructions 1 and 2. The appellants contend that the only defense instruction given by the trial court, to which they objected, was the instruction heretofore fully quoted as set forth in II, supra. (R., Vol. VIII, pp. 277-79.)
 
 
 110
 The appellants argue that the trial court erred in giving the said instruction and in denying their requested Instructions 1 and 2 on the ground relied upon by the trial court, i.e., that the requested instructions were inconsistent with the defense instruction given by the court. To support this contention, the appellants rely on Fed.R.Civ.P. rule 8(e)(2), which authorizes the pleading of inconsistent defenses. We hold that this contention is without merit. Rule 8(e)(2) is a pleading rule only; it does not reach the substantive question of whether the record contains sufficient evidence in support of the requested defense Instructions 1 and 2. It is well established that alternative and inconsistent defenses may be raised in the pleadings. Little v. Texaco, Inc., 456 F.2d 219 (10th Cir.1972); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366 (1st Cir.1980). However, such defenses should not be considered by the trier of fact unless sufficiently supported by the evidence. Cf. General Motors Corp. v. Walden, supra at 608.
 
 
 111
 As we held above, there was not sufficient evidence in the record permitting the giving of Instructions 1 and 2. Hence, the court did not err in refusing to give the requested instructions on the ground they were inconsistent with the defense instruction given by the court.
 
 IV.
 
 112
 Finally, the appellants contend that the trial court erred in denying their motion for a new trial. On appeal, they rely particularly upon the trial court's rejection of their requested Instructions 1 and 2. Under Fed.R.Civ.P. 59(a), a trial court has broad discretion to rule on a motion for a new trial and the court's decision will not be disturbed on appeal except for the showing of a gross abuse of discretion. Holmes v. Wack, 464 F.2d 86, 89 (10th Cir.1972). No such abuse has been demonstrated here.
 
 
 113
 WE AFFIRM.
 
 
 
 [1]
 The plaintiffs argue on appeal that the appellants waived the challenge to Colorado's long-arm statute when, following the district court's adverse ruling on their Motion to Dismiss for lack of personal jurisdiction, they failed to raise the challenge by any allegation of lack of personal jurisdiction in their Answer to the Amended Complaint of the plaintiffs. (R., Vol. III, pp. 299-303.) We hold that the plaintiffs' contention is without merit. Clearly, under Fed.R.Civ.Proc. rule 12(h)(1), the appellants did preserve the challenge:
 (1) A defense of lack of jurisdiction over the person ... is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
 When the appellants raised the defense of lack of in personam jurisdiction by their Motion to Dismiss, they complied with Rule 12(h)(1) and preserved the challenge on appeal. E.g., Adden v. Middlebrooks, 688 F.2d 1147, 1156-57 (7th Cir.1982); United States v. Gajewski, 419 F.2d 1088, 1091 (8th Cir.1969), cert. denied, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1969). See also Wright & Miller, Federal Practice and Procedure: Civil Sec. 1391. It is to be noted further that the Pre-Trial Order contained the following recital relative to the jurisdictional issue previously ruled on:
 
 
 [2]
 JURISDICTION
 Subject matter of jurisdiction is admitted. The defendants heretofore by motion contested the court's jurisdiction over the persons of the defendants. That motion was denied but the defendants do not waive any rights which they might have in that respect.
 (R., Vol. I, pp. 55-63) (emphasis added).