Richard PETERSON; Mike Mitchell; Lynne Easton; Norm Sundholm; Barry Curtis, Plaintiffs–Appellees,

v.

HIGHLAND MUSIC, INC., Defendant,

and

Gusto Records, Inc.; G.M.L., Inc., Defendants–Appellants.

G.M.L., INC., a Missouri corporation; Highland Music, Inc., Plaintiffs–Appellants,

v.

Richard PETERSON; Mike Mitchell; Lynne Easton; Norm Sundholm; Barry Curtis; Gerald Dennon; Jerden Music, Inc., dba Jerden Industries, Inc., dba Great Northwest Music Company, BBDO Worldwide Inc., dba BBDO Worldwide Network, Defendants–Appellees.

Richard PETERSON; Mike Mitchell; Lynne Easton; Norm Sundholm; Barry Curtis, Plaintiffs–Appellees,

v.

HIGHLAND MUSIC, INC.; Gusto Records, Inc.; G.M.L., Inc., Defendants–Appellants,

and

Stephen Hawkins, Appellant.

Nos. 95–56393, 97–55597 and 97–55599.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1998.

Decided April 10, 1998.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc June 15, 1998.*

---

* Judges Fletcher and Nelson vote to reject the suggestion for rehearing en banc, and Judge Ma-    gill so recommends.

D.C. Nos. CV–93–04672–WDK–JGx, CV–96–022420–WDK, CV–93–04672–WDK.

Before: FLETCHER, MAGILL,** and T.G. NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

This case involves an attempt by the Kingsmen, a musical group, to secure a rescission of the contract by which they assigned to others the rights to their popular recording of the hit song, "Louie, Louie." We review three actions consolidated on appeal. In the first, the parties litigated the right to rescind. In the second, the defendants sought a declaratory judgment to limit the effect of the judgment of rescission.[1] In the third, the district court imposed contempt sanctions upon the defendants for their refusal to comply with the judgment of rescission. We affirm the district court in all respects.

## I.

The facts of this procedurally convoluted case are relatively simple. The members of the Kingsmen seek to secure their rights to the master recordings (the "Masters") of their hit song, "Louie, Louie." The group made the recording over thirty years ago. They then sold the Masters to one Specter Records (first through their agent, Jerden Records, but ultimately on their own behalf) in return for nine per cent of any profits or licensing fees that the recording might generate. The Kingsmen and Specter entered into their contract in 1968. Specter's interest in the Masters was eventually transferred to Gusto Records and GML, who were the named defendants in the rescission action. The parties do not dispute that the Kingsmen have never received a single penny of the considerable royalties that "Louie, Louie" has produced over the past thirty years.

In 1993, the Kingsmen brought suit in federal district court in California for rescission of the contract, basing their claim en-

Scott A. Edelman, Los Angeles, California; Jeannette M. Bazis, Minneapolis, Minnesota, Robert Besser, Pacific Palisades, California, for plaintiffs-appellants.

Robert Besser, Pacific Palisades, California, for defendants-appellants.

Scott A. Edelman, Los Angeles, California; Jeannette M. Bazis, Minneapolis, Minnesota, for defendants-appellees.

---

** Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. For simplicity's sake, we will refer to the Kingsmen as "plaintiffs" and Gusto et al. as "defendants" throughout this opinion, although the parties technically switched roles in the declaratory action.

tirely on actions (or inactions) by the defendants that fell within the four-year statutory limitations period. After a full trial, the district court ruled in plaintiffs' favor and granted the rescission, restoring possession of the Masters to the Kingsmen. Defendants refused to comply with that judgment, however, instead filing a declaratory action in federal district court in Tennessee. In the Tennessee action, defendants asked for a declaration that plaintiffs were not entitled to any of the income that continued to be generated by those licenses that pre-existed the rescission. In the meantime, defendants steadfastly refused to comply with the first judgment and to return possession of the Masters to the Kingsmen.

The district court in Tennessee transferred the declaratory action to the Central District of California, returning it to the district judge who had handled the original action. The judge ruled, on summary judgment, that the rescission enforced in the original action was effective as of the date when the Kingsmen formally declared their intention to rescind—the date of the filing of the complaint—and that defendants must pay to the Kingsmen any royalties or profits that accrued thereafter, whether from licenses entered into after the date of rescission or from licenses that preexisted that date. The district court also issued an order in aid of enforcement of its first judgment, commanding defendants to turn over the Masters to plaintiffs forthwith. Finally, on plaintiffs' motion, the district court found defendants in contempt of court for having flagrantly violated the first judgment by refusing to turn over the Masters in a timely fashion, and also by continuing to misappropriate profits from the Masters by holding themselves out as the owners of the Masters and entering into unauthorized licenses. Defendants appeal all of these rulings.

Highland Music and Stephen Hawkins (Highland's president and sole shareholder) are also parties to this appeal. Highland negotiated and managed many of the licenses issued by GML and Gusto for "Louie, Louie" and was a party to the declaratory action.

Highland and Hawkins were both cited for contempt by the district court for aiding and abetting GML and Gusto in entering into the unauthorized, post-judgment licenses. They appeal these rulings.

This action fell within the district court's diversity jurisdiction. *See* 28 U.S.C. § 1332. The judgment of rescission, the declaratory judgment, and the contempt order are all appealable final orders. *See* 28 U.S.C. § 1291.

## II. The Rescission Action

### A.

■ Gusto and GML's primary contention on appeal in the rescission action is that the district court in California exceeded its authority under the Due Process Clause of the Federal Constitution in exercising personal jurisdiction over the defendants.[2] We review a district court's exercise of personal jurisdiction *de novo. See Sinatra v. National Enquirer*, 854 F.2d 1191, 1194 (9th Cir.1988).

Defendants' claim comes to us in a rather odd posture. Defendants filed a motion to dismiss for lack of personal jurisdiction at the outset of the proceedings below. The district court denied that motion, finding that plaintiffs had made out a *prima facie* case that an exercise of jurisdiction was proper. Defendants then failed to contest the issue of personal jurisdiction any further in the proceedings before the district court. They did state in their answer that lack of personal jurisdiction was an affirmative defense. However, they did not include the defense in any motion for summary judgment, nor request dismissal at the close of plaintiffs' case for lack of personal jurisdiction (although they moved for dismissal on several other grounds), nor, post trial, did they request the district court to dismiss on the grounds that plaintiffs had failed to carry their burden of proving personal jurisdiction. Nonetheless, defendants argue on appeal that the judgment below must be vacated because the present state of the record is insufficient to support a finding, by a preponderance of the evidence, that defendants were subject to the personal jurisdiction of the courts of California. This claim raises three issues: (1) Did

---

**2.** California's "long-arm" statute extends as far as federal due process limitations allow. *See* Cal.Civ.Proc.Code § 410.10; *Sinatra v. National Enquirer*, 854 F.2d 1191, 1194 (9th Cir.1988).

Thus, we need not conduct a separate inquiry to determine whether the exercise of jurisdiction exceeded any statutory limitations.

defendants completely waive their right to appeal the district court's exercise of personal jurisdiction; (2) If not, against what evidentiary standard should that exercise of personal jurisdiction be judged on appeal, given the present posture of this case; and (3) Measured against the applicable standard, was the district court's conclusion that it could exercise jurisdiction over defendants correct?

### 1.

■ The federal rules of civil procedure provide that "A defense of lack of jurisdiction over the person ... is waived ... (B) if it is neither made by motion under this rule nor included in a responsive pleading...." Fed. R.Civ.P. 12(h)(1). The negative converse of this rule would thus suggest that it is not waived if raised by motion. Other circuits have reached this conclusion, holding that a defendant's motion to dismiss for lack of personal jurisdiction, without more, is sufficient to avoid the waiver provision embodied in Rule 12. *See Brownlow v. Aman,* 740 F.2d 1476, 1483 n. 1 (10th Cir.1984); *Adden v. Middlebrooks,* 688 F.2d 1147, 1156–57 (7th Cir.1982). However, Rule 12 does not say that there are no other means of waiving a defense of lack of jurisdiction over the person. Plaintiffs argue that, even though defendants contested the exercise of jurisdiction at the outset of the trial, their failure to raise the issue again at any point in this vigorously litigated proceeding should be construed as an acquiescence to suit in California and hence a waiver of any right to contest the court's *in personam* jurisdiction on appeal.

■ Plaintiffs' argument has some force. Rule 12(h)(1) specifies the minimum steps that a party must take in order to preserve a defense. It does not follow, however, that a party's failure to satisfy those minimum steps constitutes the only circumstance under which the party will be deemed to have waived a defense. Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation. *See Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1296–97 (7th Cir.1993) (affirming district court's finding that defendants' conduct during litigation constituted waiver of personal jurisdiction); *Yeldell v. Tutt,* 913 F.2d 533, 538–39 (8th Cir.1990) (finding waiver where defendant raised personal jurisdiction defense in manner that was technically timely, but late in trial proceedings). For example, if a defendant were to engage in "sandbagging" by raising the issue of personal jurisdiction on a motion to dismiss, deliberately refraining from pursuing it any further when his motion is denied in the hopes of receiving a favorable disposition on the merits, and then raising the issue again on appeal only if he were unhappy with the district court's ultimate decision, then we would not hesitate to find that the defendant had waived any right to pursue the defense. *See Yeldell,* 913 F.2d at 539. In the present case, however, plaintiffs have not argued, or even suggested, that defendants engaged in such deliberate, strategic behavior, nor did the district court make any such finding. Nonetheless, plaintiffs ask us to hold that defendants' inaction on the issue of personal jurisdiction after the denial of their motion to dismiss, without more, constitutes a waiver of the issue for purposes of appeal in this case.

The rule that plaintiffs urge upon us could have the consequence that filing a motion under Rule 12 not only would not *necessarily* suffice to preserve an objection to personal jurisdiction on appeal, but that it would *never* suffice in a case that proceeds to a decision on the merits. We hesitate to adopt such an unyielding rule, which might derogate from the baseline standard that Rule 12 itself establishes. In most cases where courts of appeals have found a defendant to have waived its right to pursue a defense of personal jurisdiction on appeal, even though the defendant raised the issue in a motion or responsive pleading, other factors have been present that militated in favor of such a finding. *See, e.g., Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 915 (7th Cir.1994) ("fiduciary shield" defense to personal jurisdiction found to be waived where defendant failed to make evidentiary arguments of any sort and declined to renew issue when invited to do so by court); *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1296–97 (7th Cir.1993) (affirming district court's explicit finding that defendants' conduct during litigation amounted to waiver of personal jurisdiction defense); *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir.1990)

(finding waiver where defendants failed to raise personal jurisdiction defense in motion, raised issue for first time in answer, and then failed to pursue issue any further).

We decline to adopt such a rule. Rather, we simply join our sister circuits, *see Brownlow v. Aman,* 740 F.2d 1476, 1483 n. 1 (10th Cir.1984); *Adden v. Middlebrooks,* 688 F.2d 1147, 1156–57 (7th Cir.1982), in finding that the minimum requirements of Rule 12 are satisfied when a defendant raises the issue of personal jurisdiction in a timely motion to dismiss. In the absence of other factors militating in favor of a finding of waiver, this suffices to preserve the issue of personal jurisdiction for appeal. Since there are no such additional factors in this case, we find that defendants did not waive their right to appeal the issue.

2.

■ We must now determine what evidentiary standard the district court's exercise of personal jurisdiction should be measured against, given the posture in which the claim reaches us on appeal. As will be apparent, our conclusion that defendants have not completely waived the defense of personal jurisdiction does not mean that no adverse consequences flow from their failure to contest the issue following the denial of their motion to dismiss.

Defendants correctly point out that plaintiffs, in opposing the motion to dismiss, were only required to make, and only made, a *prima facie* showing that personal jurisdiction was proper. Defendants also point out, correctly, that plaintiffs would have borne the heavier burden of prevailing on the jurisdictional issue by a preponderance of the evidence if the issue had been contested at trial. *See Rano v. Sipa Press,* 987 F.2d 580, 587 n. 3 (9th Cir.1993); *Sinatra v. National Enquirer,* 854 F.2d 1191, 1194 (9th Cir.1988). From these two solid premises, however, defendants reach an erroneous conclusion. They claim that, despite their failure at trial to put plaintiffs to the test of meeting a preponderance standard on the jurisdictional issue, defendants can prevail on appeal if the existing record does not support a finding, by

a preponderance of the evidence, that jurisdiction is proper. That is, defendants claim that the burden rested with the plaintiffs to pursue the jurisdictional issue *proactively* during trial in order to develop a record that could satisfy a preponderance standard, despite defendants' failure to contest the issue further after losing their motion. This is incorrect.

The rule that a party must raise a defense at trial or waive the right to pursue it on appeal is based on the proposition that parties should develop a full record on all contested issues and afford the district court an opportunity to rule on those issues before they may enjoy the benefit of appellate review. *See Hormel v. Helvering,* 312 U.S. 552, 557–59, 61 S.Ct. 719, 721–23, 85 L.Ed. 1037 (1941); *Romain v. Shear,* 799 F.2d 1416, 1419 (9th Cir.1986) (declining to reach new issue where "facts relevant to [question at issue] are not fully developed"). In this case, none of the parties developed a record on the issue of personal jurisdiction beyond the few submissions each made in litigating the defendants' motion to dismiss. From the plaintiffs' perspective, there must have seemed little reason to do so: Plaintiffs prevailed on the personal jurisdiction question on pre-trial motion, and defendants did not contest the issue any further. Defendants cannot now capitalize upon the plaintiffs' early victory. Rather, defendants may seek appellate review only of the issue that they actually contested below: whether or not plaintiffs made out a prima facie case for personal jurisdiction, and whether the district court was correct in denying the motion to dismiss. This rule has been implicit in cases, in this circuit and others, where a defendant has appealed an adverse decision on personal jurisdiction after contesting the issue only in the context of a motion to dismiss. *See, e.g., Rano v. Sipa Press,* 987 F.2d 580, 587 n. 3 (9th Cir.1993); *Brownlow v. Aman,* 740 F.2d 1476, 1483 (10th Cir. 1984).[3] We now adopt that rule explicitly. Having failed to contest the issue further after losing their motion to dismiss, defendants may appeal only the district court's holding that plaintiffs made out a *prima facie* case sufficient to support an exercise of personal jurisdiction.

---

**3.** We note that a different situation may be presented when a defendant enters a special appearance for the sole purpose of contesting jurisdiction in a separate hearing and otherwise refuses

to participate in the litigation. *See, e.g., Sinatra v. National Enquirer,* 854 F.2d 1191, 1192–94 (9th Cir.1988).

### 3.

■ Having thus narrowed the issue before us, we now affirm the district court's exercise of personal jurisdiction over the defendants. In order to support an exercise of specific personal jurisdiction, plaintiffs must demonstrate that defendants had purposeful contacts with California, that the present cause of action arose out of those contacts, and that exercising jurisdiction over defendants would not be unreasonable. *See Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir.1991); *Sinatra v. Nat'l Enquirer,* 854 F.2d 1191, 1195 (9th Cir.1988). In support of their position before the district court, plaintiffs offered a series of licensing agreements that defendants entered into during the 1980s and early –90s with Warner Special Products ("Warner") that granted Warner permission to use the "Louie, Louie" Masters, and documents suggesting that defendants made similar agreements with Rhino Records. The licensing agreements and some accompanying letters describe Warner as being "of . . . Burbank, CA," and the Rhino documents describe Rhino's location as "Santa Monica, CA." These documents give rise to a strong inference that defendants engaged in negotiations with California companies that resulted in the granting of licenses for the use of "Louie, Louie," that they probably wrote letters and made telephone calls to the California offices of these companies in conducting their negotiations, that they quite possibly traveled to California as a part of these negotiations, and that the licenses may actually have been granted (i.e. the contracts formed) in California.

If these purposeful contacts did occur, then they would suffice to support an exercise of specific personal jurisdiction. Contract negotiations are classic examples of the sort of contact that can give rise to *in personam* jurisdiction, *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985); *McGee v. International Life Ins.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957); *Corporate Invest. Bus. Brokers v. Melcher,* 824 F.2d 786, 789 (9th Cir.1987), and the Kingsmen's cause of action "arises out of" those contacts, as it is the failure of the defendants to provide royalties on these and other licensing agreements that serves as the basis for plaintiffs' suit. There is nothing exceptional on the face of this case that would suggest that exercising jurisdiction over defendants in a forum where they took actions that allegedly constituted a breach of the contract at issue in the case would unduly burden either the parties or the interests of any forum. *See Roth,* 942 F.2d at 623. Thus, the district court was correct in concluding that the licensing agreements suffice to make out a *prima facie* case supporting the exercise of personal jurisdiction over defendants for purposes of this suit.

Had defendants pursued their defense further after losing their motion to dismiss, perhaps they could have rebutted, by a preponderance of the evidence, the inferences to which the licenses give rise. Having failed to pursue the issue below, however, defendants may not now enjoy the benefits of this higher evidentiary standard on appeal. We therefore affirm the district court's exercise of *in personam* jurisdiction over defendants.

### B.

■ Defendants also contend that the district court erred in holding that the statute of limitations does not bar a remedy of rescission in this case. In California, the statute of limitations for an action seeking rescission of a contract is four years. *See* Cal.Code Civ. Proc. § 337. Specifically, the statute provides that an aggrieved party must commence such an action within four years "from the date upon which the facts that entitled the aggrieved party to rescind occurred." *Id.* Both parties agree that the period of limitations has long since run with respect to the first occasions on which defendants breached their agreement. Both parties also agree that defendants have breached their agreement repeatedly over the course of the past thirty years, and did so, repeatedly, within four years of the time that plaintiffs commenced this action. Defendants' claim is that, even in the face of multiple and continuing breaches of the agreement, the California statute should be read to bar any action that is not commenced within four years of the *first* occasion on which an aggrieved party could have requested rescission. Defendants cite no authority for this proposition, and we reject it.

In analyzing requests for rescission where there have been multiple breaches under an

installment contract, California courts have held that each breach starts the clock afresh for statute of limitations purposes. In *Conway v. Bughouse, Inc.*, 105 Cal.App.3d 194, 164 Cal.Rptr. 585 (1980), for example, a California appeals court looked to the manner in which money would be paid under a pension contract in determining how a party's failure to make any given payment should affect the tolling of the statute of limitations.

> [T]he total amount of money to be paid to [the pensioner] is not a fixed sum which is to be paid out over a period of time. To the contrary, the total amount owed is unascertainable until the date of [the pensioner's] death because each payment is separate and contingent upon [the survival of the pensioner and his adherence to the terms of the contract]. As each payment is separable from the others and is not a part of a total payment, the agreement should logically be considered an installment contract for purposes of determination of the application of the statute of limitations.

*Id.* at 199–200, 164 Cal.Rptr. 585. The same holds true in the present case: There is no fixed amount to be paid out over time under the Kingsmen's contract, but rather a continuing obligation to pay a portion of the profits and royalties on "Louie, Louie" as the recording gets used over time.

The district court in this case made it clear that, in determining whether rescission was warranted and appropriate, it was relying upon breaches that had occurred within the limitations period. To find for defendant under these circumstances would be to hold that California law forever bars a party from seeking a remedy of rescission after it has once passed up the opportunity to do so, regardless of the nature of any future breaches of the other party's obligations. We have found no authority that would support such a reading of California law. We therefore affirm the district court's conclusion that the statute of limitations does not bar rescission of the contract in this case.

### C.

█ Defendants have raised a host of arguments on appeal concerning prejudice they claim they will suffer as a result of the rescission, alleged threats to the rights of third parties, and actions allegedly taken by the Kingsmen's former agent that, defendants claim, raise an equitable bar to rescission. They failed to raise any of these arguments before the district court. We apply a "general rule" against entertaining arguments on appeal that were not presented or developed before the district court. *Bolker v. Commissioner of Internal Revenue*, 760 F.2d 1039, 1042 (9th Cir.1985). There are three exceptions to this rule: (1) "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process," (2) "when a new issue arises while appeal is pending because of a change in the law," or (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citations omitted). None of these exceptions apply to the instant case. Defendants' newly minted arguments are all inherently factual in nature; none depends upon a change in the law applicable to this dispute; and none must be heard in order to prevent a miscarriage of justice. We therefore find that defendants have waived these arguments, and we will not consider them.

### III. The Declaratory Action

█ The district court issued a declaration that the judgment of rescission entitles plaintiffs to all post-rescission licensing income from the Masters, even post-rescission income from licenses originally granted before the date of rescission. Defendants claim that the district court's ruling violates the principle of res judicata. At first blush, this claim seems somewhat unusual, as it was *defendants* who initiated this declaratory action, asking for a declaration, on the merits, that plaintiffs were not entitled to the licensing income. Ordinarily, it is the party resisting a claim for relief, rather than the party initiating the claim, who asserts that his opponent is barred from recovering because the disputed matter is res judicata. Res judicata is a waivable defense. *See* Fed. R. Civ. Proc. 8(c). Thus, as an initial matter, we must decide whether defendants have waived any res judicata objections.

In a declaratory action, of course, the definitions of "claimant" and "respondent" are

effectively reversed. Frequently, the point of a declaratory action is to assert a defense anticipatorily, and a defense of res judicata may serve as the basis for a declaratory action as well as any other affirmative defense. If defendants had styled this action as a request for a declaration that any claim of right the Kingsmen might assert to the disputed licensing income is barred by the doctrine of res judicata and cannot be heard on the merits by any court, then they would not face any problem of waiver. But that is not what defendants did. Defendants requested a declaration affirmatively asserting that they had a right to the disputed licensing income and that plaintiffs had no right to that income. They raised their res judicata argument only in response to plaintiffs' motion for summary judgment. Thus, rather than saying, "we wish the court to declare that the judgment of rescission bars it from making any ruling on the licensing income because the matter is res judicata," defendants said, "we wish the court to declare that the licensing income belongs to us, and, incidentally, you have no choice but to grant us such a declaration, because res judicata bars plaintiffs from opposing the merits of our position." This they cannot do. By requesting a declaration, on the merits, that they are entitled to the very licensing income that is in dispute, defendants have waived the right to assert any defense of res judicata that they might have had.

■ Moreover, even if defendants had not waived the right to assert the defense, their res judicata argument would fail on the merits. California employs a doctrine of "primary rights" in administering the doctrine of res judicata. *See Slater v. Blackwood*, 15 Cal.3d 791, 795, 126 Cal.Rptr. 225, 543 P.2d 593 (1975); *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1438 (9th Cir.1985). "Under California law, [a] claim arises from the harm suffered, as opposed to the particular theory of the litigant. Even when multiple legal theories for recovery exist, one injury gives rise to only one claim for relief." *Eichman*, 759 F.2d at 1438. In their attempt to fit their claim within the California res judicata doctrine, defendants characterize the disputed licensing income as "consequential damages" that plaintiffs "could have sought" in the original action for rescission, arguing that the two actions involved the same "primary rights." This is incorrect. The first suit involved the Kingsmen's primary *contractual* rights, which defendants violated by not paying them royalties; the second suit involved the Kingsmen's (newly-acquired) primary *ownership* rights, which defendants violated by continuing to appropriate (and hence, by misappropriating) the licensing income from the Masters. The disputed licensing income does not constitute "consequential damages;" it is a part of the property rights enjoyed by the owner of the Masters, an incident of the ownership rights that plaintiffs were awarded in the first action. The doctrine of res judicata is no bar to the declaratory judgment entered by the district court.[3]

■ On the merits, the district court found that the rescission of the Kingsmen's contract was effective as of the date of the filing of the Kingsmen's complaint. We agree. Under California law, "a party to a contract [can] rescind it and ... such rescission [can] be accomplished by the rescinding party by giving notice of the rescission and offering to restore everything of value which [the rescinding party has] received." *Runyan v. Pacific Air Indus.*, 2 Cal.3d 304, 311, 85 Cal.Rptr. 138, 466 P.2d 682 (1970); *see also id.* at 311–13, 85 Cal.Rptr. 138, 466 P.2d 682. When a party gives notice of rescission, it has effected the rescission, and any subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission. *See id.* at 311–12, 85 Cal.Rptr. 138, 466 P.2d 682. Thus, when the Kingsmen filed suit in 1993, they rescinded the contract and became owners of the Masters. The lawsuit that followed confirmed that their rescission was a proper one and resulted in an order enforcing that rescission. The district court correctly ruled that, as the owners of the

---

**3.** Defendants also claim that a material issue of fact exists as to whether plaintiffs, in the action for rescission, waived the right to recover the "consequential damages" of the disputed licensing income. The district court correctly found that no issue of material fact exists on this question. Furthermore, as our holding makes clear, the licensing income is not "damages" and so could not have been comprised in any "waiver of a right to seek damages" in any event.

Masters, the Kingsmen are entitled to all income derived from the exploitation of the recordings following September 29, 1993, the date of the notice of rescission.

### IV.  The Contempt Proceedings

### A.

■■■■ Defendants object to the contempt citation issued by the district court. First, they claim that the district court erred in finding that contempt was warranted at all. We review the district court's order for abuse of discretion. *See In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993). Beyond finding contempt, the district court may impose a sanction for the contempt only if it finds that the party requesting the sanction has proven contempt by clear and convincing evidence. *See id.; Vertex Distrib. v. Falcon Foam Plastics,* 689 F.2d 885, 889 (9th Cir.1982).

■■■■ We address first the contempt citation. An appellate court should not reverse a finding of contempt "unless [it has] a definite and firm conviction that the district court committed a clear error of judgment after weighing the relevant factors." *In re Dual–Deck,* 10 F.3d at 695. The district court found that two aspects of defendants' conduct warranted the contempt citation. First, it found that GML and Gusto had not returned the Masters to the Kingsmen within thirty days of the date of judgment, as the judgment requires, nor had they taken any reasonable steps whatsoever to comply with that requirement. Second, the court found that GML, Gusto, Highland and Hawkins had continued to pursue, negotiate and enter into licenses for the use of the Masters, despite the clear import of the judgment that they no longer owned the rights to the Masters and should cease such activities. It also found that they had refused to provide an accounting of these activities to the Kingsmen when asked. Indeed, the court found that the defendants had made no good faith efforts to comply with the demands of the judgment at all, but rather had deliberately and contemptuously flouted the court's authority.

■■■■ The district court did not abuse its discretion in arriving at these conclusions. Far from it. Defendants do not even attempt to dispute that they failed to return the Masters for more than a year following the judgment, nor that they entered into various third-party licenses after the district court ordered the rescission. Rather, they offer various excuses as to why their repeated refusals to comply with the judgment were not their fault and should be excused. But "there is no good faith exception to the requirement of obedience to a court order," *In re Dual–Deck,* 10 F.3d at 695, nor, indeed, is there evidence in this case of good faith on the part of defendants in any event. The district court offered convincing reasons, supported by the record, for finding all of the defendants' excuses entirely unconvincing. Defendants' excuse for not returning the Masters promptly, for example, was a professed concern for not shipping the fragile tapes in a manner that would expose them to rough handling or extreme temperatures that might jeopardize their safety. However, when the district court finally ordered the defendants to deliver the Masters forthwith, defendants simply put them in a cardboard box and shipped them via standard UPS, despite the plaintiffs' willingness to make any reasonable accommodations to ensure the Masters' safety during shipping and storage. Defendants' other explanations for their actions are similarly unconvincing.

■■■■ Nor did the district court abuse its discretion in applying its contempt citation to Highland and Hawkins. Highland and Hawkins were not parties to the underlying action. However, Federal Rules of Civil Procedure 70 and 71 provide for the enforcement of judgments against non-parties in limited circumstances. "Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action." *Westlake North Property Owners Ass'n v. Thousand Oaks,* 915 F.2d 1301, 1304 (9th Cir.1990). "[T]o be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant [in violating the court's order] or be legally identified with him," *NLRB v. Sequoia District Council of Carpenters,* 568 F.2d 628, 633 (9th Cir.1977) (quotation omitted), and that the non-party have notice of the order, *see id. See also Stotler & Co. v. Able,* 870 F.2d 1158, 1164

(7th Cir.1989); *Quinter v. Volkswagen of America*, 676 F.2d 969, 972–73 (3d Cir.1982). Highland and Hawkins certainly had notice of the contents of the judgment for rescission, a fact they do not deny, and evidence concerning their licensing activities amply supports a finding that they flagrantly and deliberately aided and abetted GML and Gusto in violating the express terms of the judgment, granting licenses when they had previously stipulated that GML would transfer no rights to Highland pending the outcome of the dispute and continuing to do so following the judgment, when, as Highland knew, GML and Gusto no longer owned the rights to the Masters. This evidence is sufficient to support a finding of contempt against Highland and Hawkins, even though they were not parties to the underlying action.

### B.

Defendants next argue that the district court employed improper procedures in imposing its contempt sanctions. The district court initiated the contempt proceedings by issuing an order to show cause why defendants should not be sanctioned. It then elicited affidavits and extensive briefing on the issue from all parties. It did not, however, hold a full-blown evidentiary hearing at which the parties could present live testimony (a step that neither of the parties requested); rather, the district court issued its contempt sanctions at the close of the hearing at which the parties argued the order to show cause. Defendants claim that the failure to hold a full-blown hearing is a denial of due process that invalidates the sanctions the district court imposed against them.

Defendants are correct that a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits. *See Hoffman et al. v. Beer Drivers & Salesmen's*, 536 F.2d 1268, 1276–77 (9th Cir. 1976). However, where, as here, the affidavits offered in support of a finding of contempt are uncontroverted, we have held that a district court's decision not to hold a full-blown evidentiary hearing does not violate due process. "A trial court may in a contempt proceeding narrow the issues by requiring that affidavits on file be controverted by counter-affidavits and may thereafter treat as true the facts set forth in uncontroverted affidavits. That is what the trial court did here." *Hoffman*, 536 F.2d at 1277. Indeed, in *Thomas, Head and Greisen Employees Trust v. Buster*, 95 F.3d 1449 (9th Cir.1996), we rejected arguments very similar to the ones defendants raise.

> [Appellants] argue that the [district] court merged into one action [—an order-to-show-cause hearing—] what should have been a five-step process: (1) deciding whether to grant plaintiffs' motion to show cause; (2) issuing the show cause order; (3) providing a hearing; (4) making a finding of contempt on the basis of affidavits and other evidence; and (5) determining and imposing sanctions.

*Id.* at 1458. As we explained, the procedural steps that the appellants in *Thomas, Head* requested, and that defendants demand here, were not requirements whose elimination would violate due process.

> We find that [appellants] had ample notice and an opportunity to respond to the possibility that the court would find them in contempt. The district court expressly requested briefing in response to … [appellees' motion, and appellants] presented no admissible evidence to support their claim that they could not comply with the injunction. Although the district court did not set an evidentiary hearing on the contempt issue, the record reflects that [appellants did not ask] for such a hearing.... Given these facts and the overwhelming evidence supporting [a finding of contempt,] we think it is clear that the district court's actions did not constitute a denial of due process.

*Id.* Defendants have not described any new evidence that they could present at a hearing, nor any existing evidence that they would challenge, if such a hearing were to be ordered. The district court's decision not to hold a full-blown evidentiary hearing before imposing sanctions did not deny due process of law to the defendants.

### C.

Finally, Hawkins argues that he never received adequate notice that he was being placed in personal jeopardy in the con-

tempt proceedings against Highland, GML and Gusto. Rather, he argues that the first mention that anyone made of Hawkins being personally bound by the contempt proceedings was when the district court issued its proposed findings of fact and law in support of a finding of contempt and requested comments and objections from the parties. Hawkins argues that it would deprive him of due process of law to hold him in contempt or to sanction him personally without having afforded him notice that not only his company, but he personally, was being placed in jeopardy.

Whatever merits Hawkins' claim might have, he failed to raise this objection in the district court. It is not disputed that Hawkins was present throughout the proceedings and participated actively in Highland's defense. When the district court named Hawkins in the proposed findings of fact and conclusions of law made as the foundation of its contempt order, Hawkins could and should have objected to the district court's failure to give him notice that he would be personally bound by the proceedings. He failed to do so, even though Highland and the other defendants submitted objections to the proposed findings that repeatedly argued, on the merits, that "Mr. Hawkins, *as an individual,*" should not be held in contempt. Neither Hawkins nor, indeed, the defendants offered any excuse for failing to raise the argument of lack of notice to Hawkins.

Infirmities to the notice afforded a defendant in a civil action are waivable. *See* Fed. R. Civ. Proc. 12(h)(1) ("A defense of ... insufficiency of process ... is waived ... if it is neither made by motion under this rule nor included in a responsive pleading.") In the unusual situation presented here, we find the most sensible application of Rule 12 to require that Hawkins have raised any objection of lack of notice in the extensive objections to the proposed findings of fact and conclusions of law that defendants filed before judgment was entered, which was, functionally, a "responsive pleading" to the district court's expressed intention to bind Hawkins personally to the contempt proceeding. While defendants raised a wide variety of arguments on their own and purportedly

on Hawkins' behalf in their objections, they made no mention of Hawkins' claims of lack of notice that he would be personally bound by the contempt proceedings. We therefore find that Hawkins has waived any objections on that score.

## CONCLUSION

The district court's rulings in these consolidated actions are well-reasoned and supported by ample evidence in the record. We affirm in all respects.