**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose Vaz AYRES, Defendant–Appellant.**

**Nos. 97–55780, 97–55796, 97–56041.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1998.

Decided Jan. 28, 1999.

obtained by the Internal Revenue Service may result in contempt and fines.

## I

■ This appeal arises out of the lengthy and somewhat inept attempts by the Internal Revenue Service ("IRS") to compel testimony and the production of documents from Jose Vaz Ayres, a Varig Airlines Pilot and Brazilian citizen with a residence in Canoga Park, California. On December 7, 1993, the IRS served a summons upon Ayres by affixing it to the door of his Canoga Park home; Ayres failed to respond. At that time (and throughout this litigation), the IRS had not determined any liability on Ayres's part, and merely sought to question Ayres regarding whether he had income taxable by the United States. On June 22, 1994, the United States filed a petition in the United States District Court for the Central District of California seeking enforcement of the summons. On May 9, 1995, the court entered a summons enforcement order requiring Ayres to appear before the IRS "at such date and time as mutually convenient to the parties" in order to "give the testimony and produce all books, records, papers, and other data demanded in the subject summons." Ayres never appealed the district court's order enforcing the summons.[1]

Over the ensuing eighteen months, various "procedural glitches" (as the district court called them) interfered with Ayres's compliance with the enforcement order. These glitches were largely attributable to the IRS. For example, the IRS agreed to provide and to pay for an independent Portugese language interpreter. However, when Ayres appeared in response to the summons enforcement order on July 5, 1995, no interpreter was available and Ayres therefore declined to testify and to produce the requested documents. When Ayres appeared on May 24, 1996, the only interpreter provided was an employee of the IRS; Ayres again refused to testify.

---

Edward O.C. Ord, Ord & Norman, San Francisco, California, for the defendant-appellant.

John A. Nolet, Tax Division, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: KOZINSKI and O'SCANNLAIN, Circuit Judges and DAMRELL,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether the conduct of the subject of a summons enforcement order

---

* The Honorable Frank C. Damrell, Jr., United States District Judge for the Eastern District of California, sitting by designation.

1. "An order enforcing an IRS summons is a final appealable order." *United States v. Vallance,* 793 F.2d 1003, 1005 (9th Cir.1986) (citing *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)).

Based on these refusals to testify, the United States moved the court to hold Ayres in contempt on August 26, 1996. The district court denied this contempt motion (the first of two) because Ayres had attempted to comply with the summons enforcement order and his failure to do so was attributable, at least in part, to the IRS. Ayres subsequently moved for fees as a prevailing party on the first contempt motion pursuant to 26 U.S.C. § 7430; the district court denied the fee application.

After further procedural glitches, the parties agreed that Ayres would appear before the IRS on December 13, 1996. Ayres appeared, but refused to testify or to produce any documents. The United States again moved the district court to hold Ayres in contempt, which motion (the second of two) was granted on April 21, 1997. The contempt order provided for a ten-day grace period in which Ayres could comply with the summons enforcement order and provided for a fine of $500 for each day that Ayres failed to comply thereafter.

Ayres waited until the last business day prior to the expiration of the grace period to attempt to schedule an appearance. The IRS responded that it could not contact the relevant officers on such short notice. Because of the IRS's asserted scheduling problems, Ayres was unable to appear until May 8, 1997, four days after the expiration of the grace period, at which time he finally complied with the summons enforcement order. The government calculated Ayres's fine to be $2,000 for late compliance. Upon Ayres's subsequent motion for declaratory relief, the district court held that the proper fine was $1,500, noting that the contempt order stated that the fine would be calculated exclusive of the day of compliance.

Ayres appeals from the district court's order holding him in contempt, the order assessing the $1,500 fine, and the order denying his application for fees.

## II

Ayres first asserts that the district court erred in finding contempt and further alleges a denial of due process in making that determination.

### A

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993). An alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply. *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983); *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir.1996); *see also Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir.1998) (holding that once a prima facie showing of contempt is made, "the burden then shifts to the alleged contemnor 'to produce evidence explaining his noncompliance' "); *National Labor Relations Board v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir.1973) ("[O]ne petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply."). "Ability to comply is the crucial inquiry, and 'a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey.' " *Drollinger*, 80 F.3d at 393.

Here, it is clear that Ayres did not comply with the enforcement order prior to the issuance of the contempt order. The enforcement order required that he appear before the IRS, *testify*, and *produce documents*. It is undisputed that, despite the various procedural glitches, Ayres appeared before the IRS on December 13, 1996, but refused to testify or to produce any documents. Thus, the only question presented in the contempt proceedings was whether Ayres was unable to comply. *See Chairs*, 143 F.3d at 1436.

At his December 13, 1996 appearance before the IRS, Ayres did not assert that he was unable to testify or to produce documents. Instead, Ayres objected to the presence of various parties and challenged the validity of the underlying summons and en-

forcement order. Similarly, in his opposition to the contempt motion, Ayres did not assert that he was unable to testify or to produce the requested documents; instead, he again challenged the validity of the underlying summons and order.

■ As the district court correctly recognized, Ayres's challenges to the validity of the summons and the enforcement order could not excuse his failure to comply. It is a "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Rylander,* 460 U.S. at 756–57, 103 S.Ct. 1548 (quoting *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948) (internal quotation marks omitted)). Simply put, "[t]he only issue open to [Ayres] in defending the contempt proceeding was to show inability to then produce." *Id.* at 760.

Here, Ayres effectively conceded that the finding of contempt was warranted by failing to argue or even to assert the only defense available to him. Moreover, the record and the briefs do not reveal any reason that Ayres could not have testified when he appeared before the IRS on December 13, 1996, nor is there any evidence that Ayres could not have produced the relevant documents at that time. Thus we have little trouble concluding that the district court did not abuse its discretion in finding Ayres in contempt.

**B**

■ A closer question is presented by Ayres's due process challenge to the procedures employed by the district court in finding him in contempt. The analysis of what process was due turns upon whether the contempt was criminal or civil in nature. Criminal contempts are designed to punish; "civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience." *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *see United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980) (stating that contempts are civil where "the purpose of the relief is to compel the respondent to comply"). One of the paradigmatic civil contempt sanctions "is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." *Bagwell,* 512 U.S. at 829, 114 S.Ct. 2552. Despite Ayres's contrary assertions, the per diem fine imposed in the district court's contempt order was clearly a civil contempt sanction intended to coerce compliance, rather than to punish.

■ "Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required." *Bagwell,* 512 U.S. at 831, 114 S.Ct. 2552. Thus civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Id.* at 827, 114 S.Ct. 2552.

■ Ayres asserted in the district court, and continues to assert on appeal, that he was entitled to a full-blown evidentiary hearing prior to the district court's entry of the contempt order. This circuit has repeatedly held, however, that finding a party in civil contempt without a full-blown evidentiary hearing does not deny due process of law to a contemnor. *See Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1324 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 446, 142 L.Ed.2d 401 (1998); *Thomas, Head and Greisen Employees Trust v. Buster,* 95 F.3d 1449, 1459 (9th Cir.1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 328 (1997). In *Peterson,* we noted that "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits." 140 F.3d at 1324. We also noted, however, that where "the affidavits offered in support of a finding of contempt are *uncontroverted,* we have held that a district court's decision not to hold a full-blown evidentiary hearing does not violate due process." *Id.* (emphasis added). Thus we affirmed the finding of contempt without a full-blown evidentiary hearing. *See id.*

Similarly, in *Thomas,* we held that despite the lack of an evidentiary hearing, the "par-

ties had ample notice and an opportunity to respond to the possibility that the court would find them in contempt." 95 F.3d at 1458. We concluded that given "the overwhelming evidence" supporting the contempt motion and the fact that the alleged contemnors "did not present any arguments which created any material issue of fact," the district court's contempt finding did not constitute a denial of due process. *Id.* at 1458–59 (quoting *Commodity Futures Trading Commission v. Premex, Inc.,* 655 F.2d 779, 782 n. 2 (7th Cir.1981)). Moreover, while the contemnors in *Peterson* were afforded a hearing at which to argue the finding of contempt, *see* 140 F.3d at 1324, in *Thomas,* we upheld a finding of contempt reached without a hearing and based solely upon briefing by the parties, *see* 95 F.3d at 1458–59.

Here, the evidence that Ayres had failed to comply with the summons enforcement order was uncontroverted. Ayres opposed the contempt motion by challenging the validity of the summons enforcement order and by asserting that his refusal to testify or to produce documents was justified. Perforce, the validity of the underlying court order was not at issue in the contempt proceedings, and present inability to comply with the order was the only defense. Ayres thus effectively conceded the contempt motion by explaining why he *chose* not to comply, rather than asserting that he *could not* comply. Just as in *Thomas,* because Ayres "did not present any arguments which created any material issue of fact," 95 F.3d at 1459 (quoting *Premex,* 655 F.2d at 782 n. 2), due process did not require an evidentiary hearing prior to a finding of contempt, *see id.; Morales–Feliciano v. Parole Bd. of the Commonwealth of Puerto Rico,* 887 F.2d 1, 6–7 (1st Cir.1989) (holding that due process was afforded by finding contempt "on the papers" where there were "no disputed factual matters that required an oral proceeding").

While we do not encourage the imposition of contempt sanctions "on the papers," and while we reaffirm our admonition in *Peterson* that "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits," 140 F.3d at 1324, we conclude that because the issue of contempt was effectively uncontroverted, the procedures employed by the district court afforded Ayres notice and an opportunity to be heard sufficient to satisfy due process. We therefore affirm the district court's finding of civil contempt.

### III

 Distinct from his challenge to the district court's finding of civil contempt and the procedures employed in making that determination, Ayres next asserts that the district court erred in computing his fine. Ayres does not challenge the per diem rate of $500, but rather, the assessment of that fine for three days of non-compliance.

Ayres was personally served with the contempt order on April 24, 1997; the ten day grace period provided by that order, therefore, ended on Sunday, May 4. At roughly 3:00 p.m. on Friday, May 2 (the eighth day after service), Ayres contacted the IRS to schedule an appearance for the following Monday morning, May 5. While this was outside of the grace period, the contempt order expressly provided for a per diem fine *exclusive* of the day of compliance. Thus, had Ayres complied on May 5, he would avoided the imposition of a fine.

In response to Ayres's request for a Monday, May 5 appearance, the IRS indignantly responded that it could not schedule a hearing on such short notice. Despite this, Ayres went to the IRS's offices on May 5 and offered to testify and to produce documents. The IRS refused Ayres's offer and indicated that it could not schedule an appearance by Ayres until May 8, due at least in part to the expense of providing an interpreter and reporter. Ayres, in turn, offered to return the next day with an interpreter and reporter at his own expense. The IRS also blocked this attempt to comply, and Ayres did not appear until May 8, at which time he fully complied with the summons enforcement order.

Ayres asserted before the district court that his failure to comply with the contempt order in a timely fashion, and thus avoid any fines, was due to the IRS's dilatory tactics. In its order calculating Ayres's fine, the district court rejected Ayres's arguments and

decided that, by waiting to contact the IRS, Ayres had accepted the risk that it would be unable to accommodate him within the grace period.

 Civil contempt sanctions, however, are only appropriate where the contemnor is able to purge the contempt by his own affirmative act and "carries the keys of his prison in his own pocket." *Bagwell,* 512 U.S. at 828, 114 S.Ct. 2552 (citations omitted). A contemnor's ability to purge civil contempt, therefore, cannot be contingent upon the acquiescence of an opposing party because such an arrangement effectively renders the contempt punitive, rather than civil. *See id.* at 829, 114 S.Ct. 2552 ("[A] fine … is civil only if the contemnor is afforded an opportunity to purge.").

While Ayres may have procrastinated, there is no dispute that he made a timely attempt to purge his contempt by complying with the district court's order, but was frustrated by the IRS's refusal to hear his testimony or to accept his documents. By ignoring the IRS's intransigence and by imposing sanctions despite Ayres's inability to purge the contempt by his own affirmative act, the district court effectively imposed punitive, rather than coercive, contempt sanctions without following the heightened procedural requirements for such sanctions. *See generally Bagwell,* 512 U.S. at 826–31, 114 S.Ct. 2552. Put most simply, the district court abused its discretion because it fined Ayres for the IRS's delay. We therefore reverse the order assessing the $1,500 fine.

### IV

 Finally, Ayres appeals from the district court's denial of his motion for fees pursuant to 26 U.S.C. § 7430 as a prevailing party with respect to the district court's denial of the United States's first contempt motion. However, Ayres failed to submit supporting documentation with his application for attorneys' fees sufficient to allow the district court to determine that the fees were reasonable. He also failed to sign his decla-

ration averring that his net worth did not exceed two million dollars. Although such forms were allegedly later submitted as errata to Ayres's reply to the government's opposition, we cannot conclude that the district court abused its discretion by ruling that it would not grant fees when the government did not have a chance to see the papers relied on before filing its opposition. We therefore affirm the district court's order denying fees.

AFFIRMED in part, and REVERSED in part. Each party shall bear its own costs.