NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

NOV 21 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUST GOODS, INC., a Delaware
corporation,

        Plaintiff-counter-
        defendant-Appellee,

    v.

EAT JUST, INC., FKA Hampton Creek,
Inc., FKA Just, Inc.; and JOSHUA
TETRICK, an Individual,

        Defendants-counter-
        claimants-Appellants.

No.    23-16100

D.C. No. 3:18-cv-02198-WHO

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted September 9, 2024
San Francisco, California

Before:  BEA and MENDOZA, Circuit Judges, and M. FITZGERALD,** District
Judge.

        Defendant-Appellant  Eat  Just,  Inc.  and  its  founder  Joshua  Tetrick

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        **        The Honorable Michael W. Fitzgerald, United States District Judge
for the Central District of California, sitting by designation.

(collectively, "EJ") appeal the district court's order granting Plaintiff-Appellee Just Goods, Inc.'s ("JGI's") Motion to Enforce Compliance with a settlement agreement previously entered into by the parties (the "Term Sheet"). This is the third appeal related to the parties' interpretation of the Term Sheet.

Because the parties are familiar with the facts, we recount them only as relevant to our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review "the district court's enforcement of a settlement agreement for abuse of discretion" and the "interpretation of a settlement agreement de novo." *Ashker v. Newsom*, 81 F.4th 863, 874 (9th Cir. 2023). We review a "district court's decision to deny equitable relief for an abuse of discretion." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003). We review "a district court's civil contempt order for an abuse of discretion" and "the district court's findings of fact in connection with the civil contempt adjudication for clear error." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).

We affirm the decision of the district court and remand for a determination of the appropriate date for which the per diem fine began, or will begin, accruing.

1. The district court correctly held that the Term Sheet prohibits EJ from capitalizing and emphasizing the word "Just" in its use of the phrase "JUST Egg." A prior panel of this Court determined that the text of the Term Sheet is unambiguous, and that EJ is permitted to use the word "Just" in only three instances:

"(1) in the Frame Logo, (2) as part of the names/phrases 'Eat Just' and 'Make it Just,' and (3) in text in conjunction with a generic product name (e.g., Just Egg)." *Just Goods, Inc. v. Eat Just, Inc.,* Nos. 20-15809 & 20-17033, 2022 WL 614053, at *1 (9th Cir. Mar. 2, 2022) ("*Just I*").

EJ's use of "JUST Egg" does not fall within any of the enumerated instances. To begin, EJ's use of JUST is not limited to the Frame Logo. EJ appears to argue that the image depicting the Frame Logo in Paragraph 1 of the Term Sheet authorizes virtually any use of JUST. That argument is inconsistent with the reasoning of the district court affirmed in *JUST I* and renders the explicit permission to use JUST in the Frame Logo meaningless.

Although Paragraph 2 of the Term Sheet explicitly provides for the use of "Just Egg," only the initial letter of JUST is capitalized. The intentional capitalization principle has already been applied to Paragraphs 1, 5, and 15 of the Term Sheet, and it stands to reason that the principle extends to Paragraph 2 as well. *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1979) ("We seek to interpret the contract in a manner that makes the contract internally consistent.").

As such, EJ's obstinate use of JUST is inconsistent with the Term Sheet, the district court's prior orders, and the reasoning of *Just I*. When EJ uses JUST in text unrelated to registering the trademark and without the frame logo, only the initial

letter should be capitalized.

2.      The district court did not err in failing to find that waiver or estoppel barred JGI's challenge to EJ's use of "JUST Egg." EJ contends that the district court ignored its equitable arguments. However, district courts need not articulate its reasons for rejecting every argument made by a moving party. *See, e.g., Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982).

EJ asserts that JGI waived the argument, or should be estopped from arguing, that EJ's use of "JUST Egg" violates the Term Sheet because JGI knew about the use but failed to raise it in prior motions. On appeal, EJ argues that there were at least 75 instances of "JUST Egg" in JGI's motion for contempt that it failed to challenge. Only one of these examples, however, was presented to the district court. We decline to consider the other examples as part of the record on appeal. *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988); Fed. R. App. P. 10(a); 9th Cir. R. 10-2. Accordingly, JGI's motion to supplement the record on appeal is denied as moot.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Honcharov v. Barr*, 924 F.3d 1293, 1295 n.1 (9th Cir. 2019) (per curiam) (quoting *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017)). "An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights

4

involved." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016) (citation omitted).

JGI's failure to flag one instance of a third party's use of JUST Egg is insufficient to demonstrate an intentional relinquishment of its right. It also does not demonstrate an implied waiver that JGI was aware of EJ's widespread use of "JUST Egg" and chose not to challenge the use.

Under the theory of equitable estoppel "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (citation omitted). Further, estoppel is shown only when detrimental reliance is reasonable. *See TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 695 (9th Cir. 1990).

It is not reasonable for EJ to have believed that JGI would never challenge EJ's use of "JUST Egg" and to have increased its business focus on "JUST Egg" based on a failure to challenge a single instance where a third-party used the phrase. Holding otherwise would incentivize EJ to either breach the Term Sheet or induce others to associate it with JUST, in the hope that JGI would fail to challenge every single incorrect association of JUST.

5

3.     The district court correctly held that the Term Sheet prohibited EJ from using "@justegg" as its social media handle. Paragraph 15 of the Term Sheet requires EJ to change all social media handles and online platforms to "the new company name" or to the name "Make it Just." Paragraph 15 further requires EJ to change its Wikipedia and LinkedIn pages to "the new corporate name" or to the name "Make it Just." In order to comply with the Term Sheet, EJ changed its social media handles from @just to @eatjust and its LinkedIn page to "Eat Just, Inc."

EJ claims that Paragraph 15's failure to define or restrict its use of a "new company name" allows it to use the handle @justegg. However, the definite article "the" precedes "new company name" in the Term Sheet. "[D]efinite articles like 'the' restrict the noun that follows as particularized in scope or previously specified by context." *United States v. Lopez*, 4 F.4th 706, 721 (9th Cir. 2021). By updating its handle to comply with Paragraph 15, EJ triggered the definite article "the" and tethered "new company name" to Eat Just. *See ASP Props. Grp., L.P. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 351 (2005) ("The clear and explicit meaning of [contract] provisions, interpreted in their ordinary and popular sense, . . . controls judicial interpretation." (quoting *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995))). EJ's argument that "new company name" and "new corporate name" cannot have the same meaning is similarly unavailing. EJ fails to argue why "new corporate name" cannot equal "Eat Just, Inc.," while "new company name" equals

6

"Eat Just."

EJ also argues that the Term Sheet gives explicit permission to use Just Egg as its brand, which thereby allows it to refer to the company by that name. EJ's multi-step interpretation of the Term Sheet not only transforms the definite article to an indefinite article but also runs counter to the plain language of the Term Sheet.

Lastly, EJ claims that it would be unreasonable to only allow it to use Eat Just or Make it Just as handles in perpetuity. But the Term Sheet is only limiting EJ's use of the word "Just." EJ is free to change its handle to anything that does not include that word. If EJ would like to use JUST in its social media handle, however, it must comport with the Term Sheet.

4. The district court correctly held that the Term Sheet prohibited EJ from registering the "JUST EGG" mark. First, the "JUST EGG" word mark applications filed after the Term Sheet was executed were in direct violation of the agreement. Paragraph 2 of the Term Sheet only allows EJ to register "JUST EGG" in the Frame Logo and not as a word mark. Paragraph 12 further clarifies that EJ "shall not use or file any new trademarks with the word JUST in them other than the JUST Frame Logo and the Permitted Marks."

Second, in order to be compliant with the Term Sheet at the time it was executed, EJ was required to withdraw all of its nonconforming trademark applications. Based on this Court's interpretation in *Just I* that EJ can only use JUST

in three instances, the pending applications must conform to one of the specified instances. But the applications were in direct conflict with the explicit language of Paragraph 2 mandating EJ to use the format of the Frame Logo for all trademarks. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

5.    The district court did not abuse its discretion in finding appellants in contempt, imposing a per diem fine, and awarding attorneys' fees. "An appellate court should not reverse a finding of contempt 'unless [it has] a definite and firm conviction that the district court committed a clear error of judgment after weighing the relevant factors.'" *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) (alteration in original) (citation omitted). As discussed above, the district court did not err in its determination that the Term Sheet prohibits EJ from using "JUST Egg" or @justegg. Nor did the district court abuse its discretion in denying EJ its requested equitable relief.

Upon finding a party in civil contempt, the district court has discretion to impose sanctions. *See Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Id.* at 1380.

8

The district court determined that EJ does not appear to have learned from the court's past orders and continues to "choose to push the boundaries set forth in the parties' agreement." Considering the continued contumacy and the lack of deterrence when being sanctioned with attorneys' fees, the district court did not err in its finding.

Because the "imposition and selection of particular sanctions are matters left to the sound discretion of the trial court," *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 784 (9th Cir. 1983), we remand the case for the district court to determine whether the per diem fine imposed on EJ began accruing 14 days after the entry of its July 13, 2023 order, as was stated in that order, or sometime after the entry of this Court's memorandum.

**AFFIRMED; REMANDED** for determination of the appropriate date for which the per diem fine began, or will begin, accruing.